UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEYMAN FARZINPOUR,<br>    Plaintiff<br>    v.<br>BERKLEE COLLEGE OF MUSIC,<br>    Defendant | Civil Action No:  1:20-cv-11003 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS THE SECOND AMENDED COMPLAINT**

**INTRODUCTION**

The plaintiff, Peyman Farzinpour, was a faculty member at Berklee College of Music. His employment agreement incorporated by reference the collective bargaining agreement (CBA) between Berklee and a faculty union.  The CBA in turn incorporated various college policies, including policies concerning the investigation and resolution of complaints of sexual harassment. The CBA also includes grievance procedures, which provide for the final resolution of claims for violation of the CBA.

A female student accused Farzinpour of sexual harassment.  When confronted with the allegations, Farzinpour denied them and claimed that the female student had sexually harassed him. An investigation determined that Farzinpour was responsible for harassment.  He was suspended for 30 days without pay and given a final warning that any further misconduct would result in his termination.  After Farzinpour returned from his suspension, students reported that he spent time in class discussing the harassment case – criticizing Berklee, the investigation process, and the complainant – instead of teaching.  He was terminated as a result.

Farzinpour claims he was wrongfully suspended and terminated because he was denied a fair process, the College failed to follow its own policies, and he was discriminated against

1

because of his gender.  Even accepting the factual allegations of the complaint as true, the claims all fail as a matter of law.

The Title IX claim of discrimination in Count I fails because there is no private right of action for employment discrimination under Title IX. Such claims must be made under Title VII.

The contract, basic fairness, and estoppel claims in Counts II-IV are preempted by § 301 of the Labor Management Relations Act because they all assert that Berklee breached duties that arise from or depend on an interpretation of the CBA.  The estoppel claim also fails because a quasi-contract claim does not lie where an express agreement governs the parties' obligations.

The negligence claim in Count V is preempted insofar as it alleges a failure to investigate the harassment allegation with reasonable care, because any obligations with respect to the investigation arise under the CBA.  The claim for negligent training and supervision of the investigator fails because any duty on the part of an employer to train and supervise employees runs to the public, not to other employees like Farzinpour; there is no allegation that Berklee knew or should have known the investigator was unfit; negligent supervision and training claims lie only where a plaintiff has suffered a physical injury or property damage, which is not the case here; and the claim is barred by the exclusivity provisions of the Workers' Compensation Act.

The negligent infliction of emotional distress claim in Count VI is preempted insofar as it arises from an alleged breach of obligations arising under the CBA.  It fails in any event without a viable, underlying claim for negligence and is also barred by the Workers' Compensation Act.

The retaliation claims in Counts VII and VIII fail because Farzinpour has failed to plausibly allege a causal link between his protected activity (his report that the female student allegedly harassed him) and any adverse employment action.

RELEVANT FACTS[1]

**A.      Farzinpour's Employment Contract**

Farzinpour, joined Berklee College of Music as an Assistant Professor in 2014.  Second Am. Compl. ¶ 30.  He was promoted to Associate Professor in the fall of 2019.  *Id.* ¶ 32.

On May 10, 2018, he signed an appointment letter for the term September 1, 2018 through May 31, 2021.  *Id.* ¶ 34.  The letter provided that the appointment was "made in accordance with and governed by the policies of the Board of Trustees and the College and the Collective Bargaining Agreement between the College and Berklee Chapter of the Massachusetts Federation of Teachers Union" (the "CBA").  The letter provided that "[a]cceptance of this appointment includes the acceptance of these policies … ."  *Id.* ¶ 35; Kelly Decl., Ex. A.[2]

The CBA, also known as the "Faculty Contract Agreement," contains a "Memorandum of Understanding #1" between the College and the faculty union, which incorporates two college-wide policies into the CBA:  the Policy On Relationships Between Faculty/Staff and Students and Relationship In The Workplace (the "Policy on Relationships") and the Non-Discrimination, Harassment, and Sexual Misconduct Equity Policy and Process (the "Equity Policy").  Kelly Decl., Ex. B at 69.  The Policy on Relationships, among other things, prohibits "dating, romantic, or sexual relationships between students … and faculty."  Second Am. Compl. ¶ 71.  The Equity Policy prohibits acts of "discrimination, harassment, and sexual misconduct," and establishes procedures for the investigation and adjudication of complaints of sexual misconduct. Kelly

---

[1] For purposes of this motion, Berklee accepts as true the non-conclusory, factual allegations of the Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Citations to "Kelly Decl." refer to the Declaration of Elizabeth H. Kelly, Dkt. No. 13, filed August 17, 2020, and incorporated by reference.  In deciding a motion to dismiss, the Court may consider the entire contract and any other documents that are central to the plaintiff's claim.  *See Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 27 (1st Cir. 2018); *Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017).

Decl., Ex. C at 15-16.

**B.     Farzinpour Is Suspended for Sexually Harassing a Student**

In late July, 2019, a female student accused Farzinpour of sexually harassing her.  Second

Am. Compl. ¶ 128.  The student alleged that on the evening of July 24, 2019, Farzinpour made

"numerous unwelcome sexual advances" toward her by "[c]ommenting on her physical

appearance, for example her breasts and body shape; expressing a sexual attraction towards her;

and suggesting that they engage in sexual activity."  *Id.* ¶ 129.  Berklee opened an investigation

on two charges – whether Farzinpour sexually harassed the student in violation of the Equity

Policy and whether he attempted to engage in a dating or sexual relationship with her in violation

of the Policy on Relationships.  *Id.* ¶ 130.  Farzinpour was given notice of the allegations and

placed on administrative leave.  *Id.* ¶¶ 129, 132.  He denied the allegations and claimed that it

was the student who inappropriately made sexual overtures to him.  *Id.* ¶¶ 140, 148.

Farzinpour had an initial interview with the investigator on August 5, 2019.  *Id.* ¶ 138-

141, 182.  Farzinpour alleges that the investigator displayed bias against him in the way that she

asked probing questions and responded to his answers. *Id.* ¶¶ 144-49.

The next day, August 6, Farzinpour asked Berklee's Title IX Coordinator if he could file

a complaint against the student for sexual harassment.  *Id.* ¶ 154.  The Title IX Coordinator

replied that he should raise the issue in the context of his conversations with the investigator,

who would address his claim as part of her investigation as appropriate.  *Id.* ¶ 155.  On August 8,

Farzinpour emailed the investigator and the Title IX Coordinator to officially allege sexual

harassment by the student on the evening at issue.  *Id.* ¶ 156.  On August 15, the Title IX

Coordinator responded that she would not issue a complaint at the time out of concern that it

might be retaliatory in nature, but also said that once the investigator had gathered more details,

4

she would reassess whether to issue a complaint.  *Id*. ¶ 157.

Following the investigation, Farzinpour was found "not responsible" for any violation of the Relationships Policy, but "responsible" for sexual harassment in violation of the Equity Policy.  *Id*. ¶¶ 202, 206.  The investigator dismissed Farzinpour's account of the events of July 24, 2019, in which he accused the student of making sexually suggestive remarks.  *Id.* ¶ 250c.

Farzinpour was suspended without pay for thirty days and given a final written warning, which stated that "any further violations of Berklee policy or standards of conduct, or willful disregard for [its] expectations … will result in the termination of your employment."  *Id.* ¶¶ 202, 205; Kelly Decl., Ex. D.

Farzinpour appealed, claiming an improper process and disproportionate sanctions, Second Am. Compl. ¶ 207, but the appeal was denied.  *Id.* ¶ 210.  He then filed a grievance pursuant to Article 11 of the CBA, which also was denied.  *Id.* ¶¶ 211-12.

### C.     Events Leading to Farzinpour's Termination

Farzinpour completed his suspension and returned to teaching in February 2020.  *Id.* ¶ 213.  On March 1, 2020, the female student posted a public message on Facebook and Instagram, stating that her professor had sexually harassed her and was found responsible, but was allowed to return to campus.  *Id.* ¶ 215.  The next day, her boyfriend posted information on social media identifying Farzinpour as the professor.  *Id.* ¶ 216.  A few days later, the student and her boyfriend posted signs on campus and neighboring streets naming several male Berklee professors, including Farzinpour, and implying that they were sexual predators.  *Id.* ¶ 217.  On March 16, 2020, the *Boston Globe* published an article about sexual harassment allegations at Berklee, in which it named Farzinpour and the female student and highlighted her social media post.  *Id.* ¶ 218.  The female student promptly posted the *Globe* article on her social media,

thanking the *Globe* and the reporter for bringing the issue to light and saying, "Berklee – DO SOMETHING." *Id.* ¶ 219. Berklee's President responded to the *Globe* article by sending an email to the Berklee community, reaffirming his commitment to eliminating sexual harassment and defending Berklee's process for addressing complaints of harassment. *Id.* ¶¶ 220-24.

Farzinpour alleges that, as a result of public discussion surrounding the finding that he engaged in harassment, students confronted him during class with demanding questions. *Id.* ¶ 225. In response, he provided explanations to address their concerns, stating that the finding was erroneous and the process was unfair. *Id.*

On March 30, 2020, Farzinpour's department chair told Farzinpour that he had learned about the class discussions concerning the harassment case and that he was surprised and disappointed Farzinpour did not stick to the curriculum. *Id.* at 226. Farzinpour responded that he covered the curriculum but also felt obligated to address the students' concerns. *Id.* ¶ 227.

On April 2, 2020, the department chair informed Farzinpour that his employment was terminated. *Id.* ¶ 228. The chair explained that, notwithstanding several warnings about appropriate conduct in the classroom, several students reported that Farzinpour spent substantial class time on two occasions discussing the investigation and speaking negatively about Berklee, its Equity Office, and the female student. Kelly Dec., Ex. E. Students reported that they felt they were not prepared for the midterm exam, for which the classes were meant to prepare them. *Id.* The chair indicated that Farzinpour could have dealt with the students' questions about the harassment matter in ways that did not distract from class time and that Farzinpour's conduct was unprofessional. *Id.* The chair explained that Farzinpour's conduct violated the expectations in his final written warning and as a result his employment was terminated. *Id.*

Farzinpour alleges the College terminated him because it wanted to "vindicate the

accusing female complainant who … went public and caused Berklee public embarrassment for allegedly not taking sexual harassment of women seriously enough" and to "protect itself from negative publicity about sexual harassment … ." *Id*. ¶¶ 258-59.

**ARGUMENT**

## I.    COUNT I FAILS BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION FOR EMPLOYMENT DISCRIMINATION UNDER TITLE IX.

Farzinpour alleges in Count I of the Amended Complaint that in suspending and ultimately terminating him, Berklee discriminated on the basis of sex in violation of Title IX of the Education Amendments of 1972.[3]  Second Am. Compl. ¶ 252.  Count I fails to state a claim because Title IX provides no private remedy for claims of discrimination in employment; instead, any such claim must be asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

The Circuit Courts of Appeal are split on this issue. The Fifth and Seventh Circuits, along with District Courts in the Second, Eighth, and Eleventh Circuits, have held that Title IX provides no private remedy for claims of employment discrimination.  *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 254 (5th Cir. 1997); *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995); *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 861-62 (7th Cir. 1996), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009); *Othon v. Wesleyan Univ.*, No. 3:18-CV-00958 (KAD), 2020 WL 1492864, at *7 (D. Conn. Mar. 27, 2020); *Drisin v. Fla. Int'l Univ. Bd. of Trs.*, No. 1:16-CV-24939, 2017 WL 3505299, at *5-7 (S.D. Fla. June 27, 2017), *report and recommendation adopted*, No. 16-CV-24939-CIV, 2017 WL 10398209 (S.D.

---

[3] Title IX provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," subject to certain exceptions that are not relevant here.  20 U.S.C. § 1681(a).

Fla. Sept. 28, 2017); *Cooper v. Gustavus Adolphus Coll.*, 957 F. Supp. 191, 194 (D. Minn.

1997). The Third, Fourth, and Sixth Circuits have held that Title IX does provide such a remedy.

*Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017); *Preston v. Comm. of Va. ex*

*rel. New River Cmty. Coll.*, 31 F.3d 203, 205-06 (4th Cir. 1994); *Ivan v. Kent St. Univ.*, 92 F.3d

1185, 1996 WL 422496, at \*2 (6th Cir. 1996) (unpublished) (per curiam).[4]  As further discussed

below, the First Circuit has not yet addressed the issue.

The decisions in which Circuit Courts have rejected a private remedy for employment

discrimination under Title IX are better-reasoned and more persuasive than the decisions holding

to the contrary.  They recognize that in enacting Title VII, Congress adopted a "precisely drawn,

detailed statute" for addressing claims of employment discrimination, which includes a

requirement that a plaintiff first pursue an administrative action before the Equal Employment

Opportunity Commission (EEOC) before filing in court, and that Congress did not intend Title

IX to provide a means to "bypass" these administrative procedures.  *Lakoski*, 66 F.3d at 755-56.

The plaintiff in *Lakoski* was a professor who claimed she was denied tenure on the basis

of her sex in violation of Title IX.  *Id.* at 753.  The Fifth Circuit noted that while the Supreme

Court had recognized a private remedy under Title IX for discrimination involving prospective

or current students, none of those cases involved discrimination in employment.  *Id.* at 754.  The

Fifth Circuit then looked to Supreme Court cases examining Title VII, including *Great Am.*

*Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979), in which the Supreme

Court held that a claim to enforce rights protected under Title VII could not be made under 42

---

[4] In *Brine v. Univ. of Iowa*, 90 F.3d 271, 276 (8th Cir. 1996), the Eighth Circuit held that the trial court did not err in failing to give separate jury instructions for Title VII and Title IX in a case asserted by university faculty members concerning program closure. In that case, however, the university did not challenge – and thus the Eighth Circuit had no occasion to analyze  – the proposition that a private remedy exists under Title IX for employment discrimination claims. 90 F.3d at 276; *see also Cooper*, 957 F. Supp. at 193 n.2 (noting same).

U.S.C. § 1985, which concerns claims of conspiracy to deprive a person of their federally protected rights, because doing so would allow a complainant to bypass the administrative procedures provided in Title VII. *Lakoski*, 66 F.3d at 755. The Fifth Circuit also looked to *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976), in which the Supreme Court ruled that Title VII was the exclusive remedy for employment discrimination claims for federal workers because a "precisely drawn, detailed statute" such as Title VII "pre-empts more general remedies." *Lakoski*, 66 F. 3d 755. Title IX similarly would provide only "general remedies" for claims of employment discrimination, in comparison to Title VII.

The Fifth Circuit in *Lakoski* also examined the legislative histories of Title IX and Title VII. The Court noted that Congress enacted Title IX only months after passing the Equal Employment Opportunity Act of 1972, which extended Title VII to state and local governments and removed Title VII's exemption for educational institutions. *Id.* at 756. The Court reasoned that Congress could not have intended to create a Title IX bypass to Title VII's administrative procedures so soon after extending Title VII protection to state and local employees and employees of educational institutions. *Id.* The Court concluded that by prohibiting sex discrimination under Title IX, Congress intended only to bolster the enforcement of Title VII's existing prohibition of sex discrimination in federally funded institutions: "Congress did not intend Title IX to create a mechanism by which individuals could circumvent the pre-existing Title VII remedies." *Id.* at 757. Recognizing a Title IX remedy for employment discrimination would disrupt the "carefully balanced remedial scheme for redressing" such claims through Title VII. *Id.* at 754.

The Seventh Circuit's decision in *Waid* is to the same effect. Relying on the Supreme Court's decision in *Novotny*, the Seventh Circuit held that a public school teacher who allegedly

was denied a job based on her sex could not seek relief under Title IX; she could seek relief only under Title VII's "comprehensive statutory scheme for protecting rights against discrimination in employment." *Id.* at 861-62.

The Circuit Court decisions that recognize a private remedy for employment discrimination under Title IX rest on weaker grounds. In *Doe v. Mercy Catholic Med. Ctr.*, the Third Circuit held that a medical school resident who had complained of sexual harassment and was terminated could assert a sexual harassment and retaliation claim under Title IX. 850 F.3d at 562. The Court relied on *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975), which the Third Circuit cited for the proposition that Title VII does not preempt other remedies in private employment. 850 F.3d at 562. The holding in *Johnson*, however, was more limited. Citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974), the *Johnson* Court held that "Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both title VII and other applicable state and federal statutes … in particular, … the individual's right to sue under the provisions of the Civil Rights Act of 1866, 42 US.C. § 1981 … ." *Johnson*, 421 U.S. at 459. In *Alexander*, however, the Supreme Court held that "Title VII was designed to supplement rather than supplant, ***existing*** laws and institutions relating to employment discrimination." *Alexander*, 415 U.S. at 48-49 (emphasis added) (citing report of Senate Committee for The Equal Opportunity Act of 1972, S. Rep. No. 92-415, p. 24 (1971)). Unlike the Civil Rights Act of 1866, Title IX did not exist when Title VII was enacted.

The Third Circuit also relied on *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512 (1982), in which the Supreme Court observed that Title IX includes a "broad directive" that no "persons" may be discriminated against, which encompasses employees. 830 F.3d at 562 (citing *Bell*, 456 U.S. at 522). The decision in *Bell*, however, was only that the Department of Education's

regulations interpreting "person" to include employees was a valid exercise of the agency's regulatory authority.  *Id.*  The decision said nothing about whether there is a private remedy for employment discrimination under Title IX, nor did it discuss the preclusive effect of Title VII. *Id. Cf. Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (recognizing the difference between enforcement of Title IX by the Department and a private right of action).

The Third Circuit also relied on *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005), in which the Supreme Court held that a school employee could maintain a damages claim for retaliation under Title IX.  *Id.* at 178.  That case, however, was not an employment discrimination claim within the purview of Title VII.  The employee's claim was that the school board retaliated against him for protesting the school's discriminatory treatment of the girls' basketball team; the employee was not claiming retaliation based on a complaint of employment discrimination.  *Jackson*, 544 U.S. at 172.  The Court reasoned that "if Title IX's private right of action does not encompass retaliation claims, the employee would have no recourse if he were subsequently fired for speaking out."  *Id.* at 180.  For employment discrimination claims like Farzinpour's, however, the employee does have recourse – through Title VII.

The Fourth Circuit's decision in *Preston* also is unpersuasive.  The Court relied, without any analysis, on *Bell*, 31 F. 3d at 206, which did not involve a private right of action under Title IX.  The Court also relied on *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979), *id.*, but *Cannon* involved a discrimination claim by a prospective student who was denied admission to medical school, for whom no other private remedy existed.  441 U.S. at 705.

The Sixth Circuit's decision in *Ivan* also is unpersuasive.  The Court wrote in a footnote that it was overruling a different district court case, which held that Title VII preempts a private remedy under Title IX.  1996 WL 422496, at *2.  The Court gave no analysis or explanation for

its decision.  *Id.*

The First Circuit has not directly addressed the question whether Title IX provides a private right of action for a claim of employment discrimination.  In *Lipsett v. Univ. of P.R.*, 864 F.2d 881 (1st Cir. 1988), the Court addressed claims of sex discrimination brought by a medical school resident whose status was that of "both an employee and a student in the [residency] program." *Id.* at 897.  The university did not challenge the resident's ability to bring her claim under Title IX, and thus the First Circuit had no occasion to address whether the claim properly could have been brought only under Title VII.  Instead, the case concerned only the question of what standard should apply to the claim of discriminatory treatment. *Id.* (extending the Title VII burden-of-proof standard "to discriminatory treatment by a supervisor in this mixed employment-training context").

One District Court in the First Circuit has directly addressed the issue.  The Court in *Bedard v. Roger Williams Univ.*, 989 F. Supp. 94 (D.R.I. 1997), concluded that Title IX does provide a private cause of action for employment discrimination, although noting that the issue remains undecided by the First Circuit and that there is ample authority to the contrary. *Id.* at 97.

This Court should follow the more persuasive analysis of the Fifth and Seventh Circuits and rule that Title IX does not provide a private right of action for Farzinpour's employment discrimination claim.

## II.     THE CONTRACT CLAIMS IN COUNTS II AND III ARE PREEMPTED BY § 301 OF THE LABOR MANAGEMENT RELATIONS ACT.

In Count II of the Complaint, Farzinpour alleges that Berklee breached the express and implied terms of his employment agreement in various ways, such as allegedly failing to conduct a timely review of the complaint; failing to conduct a "thorough, impartial, and fair"

investigation; failing to gather and consider all relevant evidence; failing to provide an equal opportunity to share information; failing to provide access to the evidence; failing to apply the preponderance of the evidence standard; failing to abide by the College's anti-retaliation policy; and failing to conduct any formal process before terminating him.  Second Am. Compl. ¶¶ 263-333.  In Count III, Farzinpour alleges that his employment contract contained an implied covenant of good faith and fair dealing, which required that any disciplinary proceeding would be conducted with "basic fairness," *id*. ¶ 335, and that Berklee denied him a fair process.  *Id.* ¶¶ 342-58.

Farzinpour's employment contract comprises his appointment letter, which expressly incorporates the CBA, which in turn incorporates the policies that Farzinpour claims Berklee has violated – i.e., the policies and procedures for addressing complaints of harassment and retaliation.  Second Am. Compl. ¶ 263; Kelly Decl., Ex. A, Ex. B at 69.  In addition, as noted above, the CBA incorporates a grievance procedure for addressing any complaint that Berklee has violated the CBA.  Second Am. Compl. ¶¶ 211-12; Kelly Decl. Ex. B at Art. 11, p. 9.  As a result, the contract claims in Counts II and III are preempted.

A claim for violation of a collective bargaining agreement is governed exclusively by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. 185 § 185(a).  *See Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54 (1st Cir. 2011).  Any state law claims that "require construing the collective-bargaining agreement" are completely preempted.  *Id.*  The First Circuit "has made clear that § 301 preempts a state-law claim when 'the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'"  *Id.* at 54-55 (citations omitted).  "A state-law claim … 'can 'depend' on the 'meaning' of a collective bargaining agreement' if either (1) 'it alleges conduct that arguably

13

constitutes a breach of duty that arises pursuant to a collective bargaining agreement,' or (2) "its resolution arguably hinges upon an interpretation of the collective bargaining agreement.'" *Id.* (quoting *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997)).

Farzinpour's breach of contract claims are preempted under both prongs of this test.  His claims are that Berklee breached its duty to abide by the procedural and fairness requirements that are incorporated into the CBA.  A resolution of those issues obviously hinges on interpreting the CBA and the policies that it incorporates.  *See Karetnikova v. Trs. of Emerson Coll.*, 725 F. Supp. 73, 77 (D. Mass. 1989) (professor's claim against college for violating the covenant of good faith and fair dealing, which implicated a CBA, was preempted by § 301).[5]

## III.   THE ESTOPPEL CLAIM IN COUNT IV IS PREEMPTED AND BARRED ON OTHER GROUNDS.

Farzinpour's promissory estoppel claim in Count IV is tied to Berklee's alleged breach of the Equity Policy, which is incorporated into the CBA.  Second Am. Compl. ¶¶ 362-64.  Thus, it is preempted by § 301 of the LMRA, for the reasons discussed just above.

Count IV also fails because where, as in this case, a written contract governs a matter, recovery under a quasi-contract theory is not available.  *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 196 (D.R.I. 2016); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 612 (D. Mass. 2016).

---

[5] Nor could Farzinpour amend his Complaint to add a claim under § 301.  "Judicial review under Section 301 … is available to resolve disputes under collective bargaining agreements only '[i]n the absence of an agreement for arbitration or some other form of final resolution of dispute.'"  *Local 791, United Food & Commercial Workers Union v. Shaw's Supermarkets, Inc.*, 507 F.3d 43, 46–47 (1st Cir. 2007) (quoting *Local 369, Utility Workers Union of Am., AFL–CIO v. Boston Edison Co.*, 588 F. Supp. 800, 804 (D. Mass. 1985), *aff'd* 752 F.2d 1 (1st Cir. 1984)); *see also DeGrandis v. Children's Hosp. Bos.*, 806 F.3d 13, 17 (1st Cir. 2015).  The CBA in this case provides a process for the "final resolution" of grievances, Kelly Decl., Ex. B at 10, 11, which Farzinpour must abide by.  *See Local 791,* 507 F.3d at 48 (§ 301 claim is unavailable where grievance procedure provides a final resolution).

**IV.      THE NEGLIGENCE CLAIMS IN COUNT V FAIL ON MULTIPLE GROUNDS.**

Farzinpour alleges in Count V that in conducting its investigation of the female student's harassment claim, Berklee breached its duty to conduct the investigation with reasonable care. Second Am. Compl. ¶¶ 369-70.  There is no duty in the common law of negligence to conduct a sexual harassment investigation with reasonable care; rather, any duty to conduct such an investigation pursuant to a particular standard would arise, if at all, as a matter of contract.  *See Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 94 (1st Cir. 2018) (citing *Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 289 (D. Mass. 1987)).  Any duty that Berklee owed Farzinpour relative to the investigation arose under the CBA, with the result that any claim for breach of duty is preempted by § 301 of the LMRA.  *See Flibotte v. Penn. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997) (state law negligence claims that "spring from duties imposed by [a] collective bargaining agreement" are preempted by § 301).

Farzinpour also alleges in Count V that Berklee breached a common law duty to supervise and train its employee – i.e., the investigator for the sexual harassment claim.  Second Am. Compl. ¶ 372.  This claim fails for multiple reasons.  First, an employer's duty to supervise and train its employees runs only to the public, not to other employees such as Farzinpour.  *Bell v. Rinchem Co., Inc.*, No. CV 4:14-40177-TSH, 2014 WL 11290899, at *18 (D. Mass. Dec. 2, 2014); *Hall v. FMR Corp.*, 559 F. Supp. 2d 120, 128 (D. Mass. 2008); *Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. 241, 246 (D. Mass. 1997); *Foster v. Loft, Inc.*, 26 Mass. App. Ct. 289, 291 (1988).

Second, to state a claim for negligent training, a plaintiff must allege that the employer was or should have been aware of "problems with an employee that indicated his unfitness," but failed "to take further action such as investigating, discharge or reassignment."  *Helfman v. Northeastern Univ.*, 485 Mass. 308, 2020 WL 4280070, *11 (2020) (quoting *Foster*, 26 Mass.

App. Ct. at 291); *see also Saldivar v. Racine*, 818 F.3d 14, 21 (1st Cir. 2016); *Doe v. Medeiros*, 168 F. Supp. 3d 347, 354 (D. Mass. 2016); *Vicarelli*, 973 F. Supp. at 246.  There is no allegation that Berklee was or should have been aware of any fact that would indicate the investigator was unfit for her duties.

Third, a claim for negligent training or supervision fails where the plaintiff, as in this case, did not suffer a physical injury or the threat of a physical injury.  *See Doe v. Senechal*, 66 Mass. App. Ct. 68, 76 (2006).

Fourth, in the absence of personal injury or property damage, a negligence claim also is barred by the economic loss doctrine.  *Patriarca v. Ctr. For Living & Working, Inc.*, No. 99689B, 1999 WL 791888, at *5, n.6 (Mass. Super. Sept. 8, 1999) (doctrine applied to negligent supervision and retention claim); *see also Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 469 (2009); *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993); *R.L. Whipple Co. v. Pondview Excavation Corp.*, 71 Mass. App. Ct. 871, 873 (2008).

Finally, claims of "negligence in hiring, supervising and retaining" fellow employees are barred by the Massachusetts Worker's Compensation Act.  *Clarke v. Kentucky Fried Chicken of Cal.*, 57 F.3d 21, 27-29 (1st Cir. 1995); *see also Ruffino v. State St. Bank & Trust Co.*, 908 F. Supp. 1019, 1052 (D. Mass. 1995) (claim for negligent supervision and retention of co-worker for failure to prevent harassment barred by worker's compensation exclusivity provision); *see also Johnson v. Amherst Nursing Home, Inc.*, No. 14-30100-MGM, 2015 WL 4750932, at *9 (D. Mass. Aug. 11, 2015) (citing *Anzalone v. MBTA*, 526 N.E.2d 246, 249 (Mass. 1988)).

## V.  THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM IN COUNT VI FAILS ON SEVERAL GROUNDS.

Farzinpour's claim in Count VI for negligent infliction of emotional distress is derivative of the negligence claims in Count V and fails for the same reasons.  To the extent the claimed

negligence involves duties that arise in connection with the CBA, the claim is preempted by LMRA § 301.  And because there is no independent basis for a claim of negligence – no viable claim for negligent supervision or training – there is no basis for a claim of negligent infliction of emotional distress.  *See Doe v. Trs. of Bos. Coll.*, 892 F.3d at 95 (negligence is a necessary element of a claim for negligent infliction of emotional distress, and no such claim lies where the only viable claims arise as a matter of the parties' contractual relationship).

Farzinpour's claim for negligent infliction of emotional distress also is barred by the exclusivity provision of the workers' compensation act because he is claiming personal injury "aris[ing] out of and in the course of ... employment."  *Green v. Wyman-Gordon Co.*, 664 N.E.2d 808, 813 (Mass. 1996) (quoting *Foley v. Polaroid Corp.*, 413 N.E.2d 711, 713-14 (Mass. 1980)).  "Personal injuries … include mental or emotional disabilities … where the predominant contributing cause of such disability is an event or series of events occurring within any employment."  M.G.L. c. 152 § 1(7A).

## VI.   COUNTS VII AND VIII FAIL TO STATE A CLAIM FOR RETALIATION.

Farzinpour alleges that Berklee retaliated against him for reporting that the female student who accused him of harassment had sexually harassed him.  Second Am. Compl. ¶¶ 389, 392, 406, 409.  He alleges that the retaliation included failing to investigate or remedy his claim of sexual harassment; failing to conduct a thorough and impartial investigation of the student's claims against him; rendering an erroneous finding against him; imposing an administrative leave during the investigation; and terminating his employment.  *Id.* ¶¶ 390, 407.

To state a prima facie case for retaliation under Chapter 151B and Title VII, Farzinpour must demonstrate that there is a causal connection between his protected conduct (asserting a complaint of harassment) and an adverse employment action.  *Soni v. Wespiser*, 404 F. Supp. 3d

323, 332 (D. Mass. 2019) (citing *Roy v. Correct Care Solutions*, LLC, 914 F.3d 52, 70 (1st Cir.

2019));.*Mole v. Univ. of Mass.*, 442 Mass. 582, 591-92 (2004). "The causation element of a …

retaliation claim is not satisfied by evidence that retaliation was one motivating factor in the

adverse action." *Soni*, 404 F. Supp. at 332.   "Instead, a plaintiff 'must show 'but-for' causation'

… In other words, a plaintiff must show that the adverse action would not have occurred in the

absence of the protected activity." *Id.*  Moreover, "[t]he mere fact that one event followed

another is not sufficient to make out a causal link." *Mole*, 442 Mass. at 592 (quoting

*MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662 n.11 (1996)).  "That an employer knows

of a discrimination claim and thereafter takes some adverse action against the complaining

employee does not, by itself, establish causation." *Id.*  While "[t]emporal proximity [between the

protected activity and adverse action] can create an inference of causation, [that] inference …

becomes tenuous with the passage of time." *Soni*, 404 F. Supp. 3d at 332 (citations and

quotations omitted).

  Farzinpour has failed to plausibly allege any causal link between his report of alleged

harassment and an adverse employment action.  An investigation of the student's harassment

complaint against him already had been initiated, and he already had been placed on

administrative leave, in July 2019, Second Am. Compl. ¶ 184, before he complained in August

that the student harassed him. *Id.* ¶ 157.  When "adverse employment actions … predate any

knowledge that the employee has engaged in protected activity, it is not permissible to draw the

inference that subsequent adverse actions, taken after the employer acquires such knowledge, are

motivated by retaliation." *Mole*, 442 Mass. at 594

  Farzinpour's claim that the investigation was biased in retaliation for his protected

activity also fails because he alleges that the investigator was biased from the start, during the

first interview, which also occurred before he made his report.  Second Am. Compl. ¶¶ 144-49, 156.

Farzinpour's allegation that Berklee failed to investigate his report of harassment by the student also is belied by his own complaint:  he concedes that he shared with the investigator his account of what happened on July 24, 2019, which the investigator considered before ultimately "dismissing" his account that it was the student who sexually harassed him.  *Id.* ¶¶ 156, 168, 175, 250c.  Moreover, even assuming Farzinpour plausibly alleged that Berklee failed to investigate his claim that the student harassed him, the failure to investigate a complaint of discrimination does not constitute an adverse action sufficient to support a retaliation claim because it does not affect the terms or conditions of employment.  *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640-41 (10th Cir. 2012); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010); *see also Chadwick v. Duxbury Pub. Sch.*, 97 Mass. App. Ct. 1106, 2020 WL 1280287, *6 (2020) (citing *MacCormack*, 423 Mass. at 663) ("'objective evidence that [one has] been disadvantaged in respect to salary, grade, or other objective terms and conditions of employment'" is necessary to prove retaliation claim; 'subjective feelings of disappointment and disillusionment' do not suffice").

Farzinpour also has failed plausibly to allege that his termination, after it was learned that he spent class time complaining about the student and Berklee's handling of her complaint, was in retaliation for his claim that the student harassed him.  The termination occurred nearly eight months after the protected conduct, Second Am. Compl. ¶ 228, which is too remote in time to justify an inference of retaliation.  *See Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 828

(1st Cir. 1991) (nine month period between protected conduct and alleged retaliation undermined inference of causation); *Rock v. Lifeline Sys. Co.*, No. CV 13-11833-MBB, 2015 WL 6453139, at *14 (D. Mass. Oct. 23, 2015) ("a gap of six months may be insufficient" to establish causality).

Farzinpour's claim that he was fired in retaliation for reporting sexual harassment also is belied by his own complaint.  The complaint acknowledges that Farzinpour's termination resulted from his department chair learning that Farzinpour was using class time to discuss with student's the case against him.  Second Am. Compl. ¶¶ 225-29.  Moreover, Farzinpour does not allege that the chair knew anything about his alleged protected activity.  In addition, Farzinpour alleges that his termination resulted not from his assertion that the student harassed him, but from Berklee's alleged desire to avoid negative publicity about student sexual harassment claims.  *Id.* ¶¶ 258-59.  That allegation does not involve retaliation for any protected activity.

Where, as in this case, a retaliation claim rests not on any plausible evidence, but instead on mere legal conclusions and "rank speculation" about the motives of decision-makers, it must be dismissed.  *Saxena v. Univ. of Mass. Med. Sch.*, 442 F. Supp. 3d 395, 404 (D. Mass. 2020).

## CONCLUSION

The Court should dismiss the Second Amended Complaint for failure to state a claim.

BERKLEE COLLEGE OF MUSIC,

/s/ Elizabeth H. Kelly
Daryl J. Lapp (BBO No. 554980)
   daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
   liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
617.230.0100

October 9, 2020

20

**Certificate of Service**

I certify that on October 9, 2020, this document was filed through the ECF System of the United States District Court for the District of Massachusetts and will be served electronically on the Registered Participants identified in the Notice of Electronic Filing.

/s/ Elizabeth H. Kelly
Elizabeth H. Kelly

83624541v.3