UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PEYMAN FARZINPOUR,**  *Plaintiff,*  v.  **BERKLEE COLLEGE OF MUSIC,**  *Defendant.* | Civil Action No. 1:20-cv-11003  DATE: October 5, 2022 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS ANSWER AND ADD AN AFFIRMATIVE DEFENSE**

Plaintiff Peyman Farzinpour ("Plaintiff" or "Farzinpour") respectfully submits this Memorandum of Law in Opposition to Defendant Berklee College of Music's ("Berklee") motion for leave to add an affirmative defense to its answer (the "Answer").

Berklee claims that it is seeking to amend based on the "after-acquired evidence doctrine." Yet there is no "after-acquired evidence." Berklee bases its motion on information that it has indisputably had since 2020. Berklee is simply asking the Court to cut off Plaintiff's damages claim in light of the recent summary judgment decision dismissing Plaintiff's claims of gender discrimination on the second underlying "Jane Roe" complaint. ECF No. 83. Berklee issued a *post hoc* dismissal of Farzinpour on this complaint after already firing him in retaliation and getting sued for it. *Id.* Berklee had all the time in the world to bring this supposed affirmative defense before it filed its Answer (filed June 10, 2021). Berklee has delayed until the eve of trial to move to add this affirmative defense. It does not deny that it possessed full knowledge at the time of its original Answer—and for well over

1

one year of litigation thereafter.[1] This is inexplicable, prejudicial delay. The motion should be denied on this ground alone.

Furthermore, the motion is more properly construed as a premature motion in limine—perhaps in order to get around the limit on the number of motions in limine set by the Court. But whatever Berklee's reason, this Court's discussion of damages at the parties' Pretrial Status Conference of October 4, 2022 nevertheless makes it crucial to answer the straightforward question raised on this motion:

> Does the Court's decision on summary judgment as to liability, holding that Berklee's second, *post hoc* Title IX process against Farzinpour was not infected by gender bias, cut off his evidence of post-termination damages, even though a dispute of fact remains over whether, **but for** the first Title IX process, Farzinpour's *post-hoc* termination would not have happened?

Plaintiff submits that this is for the jury to decide. Neither party seeks to reopen the Court's decision on Summary Judgment. ECF No. 83. Yet granting summary judgment on discrimination liability for Farzinpour's second, *post hoc* termination should not be read to cut off damages flowing from Farzinpour's first termination, from which the second flowed. Defendant's motion should therefore be denied on this substantive ground as well.

I.   **APPLICABLE LEGAL STANDARDS.**

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits the amendment of a pleading prior to trial "when justice so requires," with the opposing party's written consent or with leave of the court. Fed. R. Civ. P. 15(a)(2). When the court has set forth a scheduling order under Rule 16(b) of

---

[1] Plaintiff asserted multiple claims for retaliation and discrimination against Berklee, five of which remain after summary judgment and are presently scheduled for trial. (ECF No. 83, 105). In an effort to not overly burden the Court and produce duplicative material, Plaintiff refers to his Third Amended Complaint (ECF No. 46), Statement of Material Facts in Dispute (ECF No. 70), and Memorandum in Opposition of Defendant's Motion for Summary Judgment (ECF No. 69 at 4-9, 11-24) in support of his claims of discrimination and retaliation.

the Federal Rules of Civil Procedure, a demonstration of good cause is necessary in order to amend a pleading where the "lack of diligence [of the moving party] serves as the 'dominant criterion.'" *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019); *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013); *see also U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192 (1st Cir. 2015); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008). The court typically looks unfavorably upon a party who seeks to amend a pleading to include information that was available to it at the outset. *Miceli v. JetBlue Airways Corp.,* 914 F.3d at 86 (stating that "protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend" and "[n]or should a court be expected to look kindly upon a [party] who seeks belatedly to amend her complaint based on 'information that [she] had or should have had from the outset of the case.'") (internal quotations and citations omitted).

By way of example, the after-acquired evidence doctrine, upon which Defendant relies, permits an employer to utilize evidence discovered at a later date as a "legitimate reason[] for taking adverse employment action" if it "would have justified or mitigated the employer's otherwise impermissibly discriminatory action (e.g., discharge) relating to that employee." *City of Springfield v. Civ. Serv. Comm'n*, 469 Mass. 370, 378, 14 N.E.3d 241, 249 (2014). While Massachusetts has neither explicitly adopted nor rejected the after-acquired evidence doctrine, the First Circuit has previously allowed the consideration of such evidence solely for the purpose of determining damages, but not liability. *Heagney v. Wong*, 915 F.3d 805, 820-21 (1st Cir. 2019); *see also Dusel v. Factory Mut. Ins. Co.*, No. CV 19-11698-NMG, 2021 WL 2953322, at *3 (D. Mass. July 14, 2021); *EventMonitor, Inc. v. Leness*, 473 Mass. 540, 543, 44 N.E.3d 848, 851 (2016). Importantly, the after-acquired evidence doctrine is not permitted when termination is a result of "impermissible reasons, such as discrimination or retaliation." *EventMonitor, Inc. v. Leness*, 473 Mass. at 548, citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 359–360, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

In this case, Defendant's reliance on the after-acquired evidence doctrine is misplaced. The Supreme Court has made clear that "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 362-63 (1995). Berklee never showed—and this Court did not hold—that undisputed evidence proved that Farzinpour would have been fired on the ground of the second Roe matter, standing alone. Compare ECF No. 83 at 26-28. The sanction in the Alali matter, which involved substantially similar allegations, was a brief suspension of only 30 days, not the ruination of Farzinpour's career through termination. Furthermore, Berklee fired Farzinpour only later, after the first Alali process was concluded, in retaliation for engaging in the protected activity of complaining about Berklee's biased and unfair investigative process.

## II. RECORD EVIDENCE SHOWS THAT BERKLEE'S *POST HOC* SANCTION WAS OUT OF LINE WITH PREVIOUS PRACTICE, AND PARTY ADMISSIONS SHOW THAT THE EXTREME *POST HOC* SANCTION OF TERMINATION WAS LINKED TO THE ALALI COMPLAINT

In other matters between 2016 and 2019 that involved complaints of a similar nature to that of Roe against Farzinpour (allegations brought by one accuser against a Berklee faculty or staff member), Berklee **did not terminate any employees** upon a finding of responsibility. (See Exhibit A; Exhibit B, Burke Dep. Tr. 86:14-19, 88:1-20). Instead, the sanctions that Berklee dispensed in matters involving a first-time complainant for similar violations included: (i) four written warnings; (ii) two required online trainings; (iii) one prohibition from non-contract work; and (iv) one cautionary warning. *Id.* Berklee *only* fired faculty or staff in matters involving *multiple* complainants. *Id.*

Berklee also admits this through a business record documenting Kelly Downes' decision-making process when Farzinpour appealed his *post hoc* sanction of termination on the Jane Roe

4

complaint. When asked what "cases . . . you [Downes] utilized for sanctioning to determine precedent," the "Answer from Kelly Downes" was:

> The first case was a sexual harassment complaint that relied upon utilized [sic.] **multiple complaints** over a period of time.

(Emp. added; Exhibit E, marked Exhibit 143 at BCM02665.) Thus, the "precedent" expressly relied upon by Berklee indicates that it weighed prior, "multiple" complaints against Farzinpour to reach the conclusion that he had to be fired a second time. The prior complaints were relevant to its decision to dredge up the long-stale allegations of Jane Roe and fire him all over again. The only prior complaints against Farzinpour were, of course, the Alali allegations and the retaliatory sanction for responding to his students' questions in class about those allegations.

Again emphasizing the importance of Farzinpour's alleged prior derelictions raised by Alali, Downes explained her decision-making process as follows: "The sanction was applied due to the misuse of power and authority with students, the nature of behavior itself, **the pattern of behavior due to prior complaints**, and that he seems unable or unwilling to conform to expectation of the position" (emph. added). (*Id.* at BCM002663.) Thus, the Jane Roe complaint did not stand alone. It was always connected to the Alali complaint, at least in the mind of Berklee's administration. Not coincidentally, Berklee's administration was also fending off Farzinpour's lawsuit by this time and seeking *post hoc* justification for having already (illegally) fired him. Thus, by Berklee's own business records, the concatenation of complaints against Farzinpour influenced the second, *post-hoc* sanction. (See also *id.* at BCM02663-2664.)

Furthermore, Berklee's detailed statements and established patterns of administrative action are much more probative than the conclusory statement, no doubt vetted by litigation counsel already engaged in Berklee's defense of this civil action, that "Mr. Farzinpour's [Jane Roe] case would have been fireable even without the prior [Alali and retaliation] case." (*Id.* at BCM02665.) Notably, this conclusory statement, which is strikingly different from Berklee's very detailed

5

statements concerning the importance of Farzinpour's alleged prior wrongdoing in the Alali case, says nothing about why Jane Roe's allegations that he made her feel "nervous" and the like rose to the level of a fireable offense.  Compare ECF No. 83 at 15.  It is devoid of any detail.

At the very least, a dispute of fact remains whether Berklee simply created this *post hoc* evidence in bad faith and whether Berklee's condemnation of Farzinpour for a newly conjured "fireable offense" (after he had sued for discrimination) departed from its well-established pattern of leniency.  This Court's summary judgment decision does not wash away this dispute of fact.  This Court held only that Berklee did not discriminate on the basis of sex in the Jane Roe allegation. ECF No. 83 at 28.

### III. ABSENT THE ERRONEOUS OUTCOME IN THE ALALI MATTER, BERKLEE WOULD HAVE TREATED THE ROE MATTER AS ONE THAT INVOLVED A SINGLE COMPLAINANT

Berklee treated the Alali matter as one that involved a single complainant, since Farzinpour had no prior history of any such complaints.  Without Alali, Berklee would have treated the Roe matter as one that involved a single complainant. Even if Berklee had found Farzinpour responsible in the Roe matter, absent the prior outcome in the Alali matter, the Roe matter would not have resulted in termination. (See Exhibit A; See Exhibit B, Burke Dep. Tr. 86:14-19, 88:1-20).

Instead, Berklee would have imposed a sanction in line with those imposed in other single-complainant Title IX cases. This is what the record evidence shows. At deposition, Title IX Coordinator Kelly Downes, who determined that Plaintiff "would have been terminated" for the Roe matter, was asked how she arrived at the sanction of termination. (See Exhibit C, Downes Dep. Tr. Vol. II, 37:3-15). Downes responded that she "considered all of the factors that I am required to consider in our Equity Policy," Exhibit C, 37:10-11. And according to the Equity Policy at the time of Downes' decision, one required factor was "disciplinary history and previous acts of similar misconduct." (See Exhibit F, Equity Policy, at BCM002165). This represents yet another admission by Downes that her *post hoc* decision to impose termination in the Roe matter was based in part on the

6

Alali investigation and finding. Berklee's position that, even if it acted unlawfully in the Alali matter and first terminated him in retaliation for his protected behavior, Plaintiff would *still* have been terminated due to the Roe allegation *alone* is groundless, implausible, and based on a conclusory statement that Berklee's other party admissions flatly contradict.

Furthermore, the Court should not look away from the fact that Berklee issued its *post hoc* termination in the Roe matter only after Plaintiff filed this lawsuit. Berklee first terminated Farzinpour on April 2, 2020. (ECF No. 70, ¶ 194). Farzinpour filed his complaint against Berklee on May 26, 2020. (ECF No. 1). Berklee then completed its investigation of the Roe complaint over the next few months, issuing the final investigation report and finding of responsibility on August 14, 2020—more than four months after Farzinpour's termination and nearly two months after he sued Berklee for discrimination. (ECF No. 70-54; ECF No. 70, ¶ 222).

At that point, Defendant was powerfully motivated to issue a sanction of termination in the Roe matter for exactly the reason that Defendants raise here: to cauterize the wound, stop the bleeding, and cut off Berklee's damage exposure for ruining Farzinpour's career.  Were Farzinpour to point to changes in Berklee's behavior *post hoc,* the Court would never allow it under the subsequent remedial measures doctrine;[2] but here, Berklee seeks to remediate its own wrong and hold it up as evidence that it should face no consequences.

Indeed, Berklee's incentive to issue the extreme, disproportionate, and unusual sanction of termination in the Roe matter is made even more plain in its self-serving motion to amend.  Berklee unlawfully retaliated against Farzinpour in the first instance for engaging in the protected activity of complaining about Berklee's biased and unfair process; then, after he engaged in the even stronger-

---

[2] "[E]vidence of subsequent remedial measures is not admissible to prove, inter alia, culpable conduct, although it may be admissible for another purpose, such as impeachment. Fed. R. Evid. 407." *Fernandes v. Bouley*, No. 20-11612-GAO1, 2022 U.S. Dist. LEXIS 131260, at *12 (D. Mass. July 25, 2022).

7

protected activity of filing a federal civil-rights complaint, Berklee then issued the unusually harsh sanction of termination in the second instance. It then created a paper trail of double-speak that emphasized Farzinpour's previous alleged derelictions in the Alali matter while simultaneously issuing conclusory statements that Berklee did not emphasize them.

Berklee clearly hopes that Farzinpour's second termination will stifle his damages claim. But to allow this tactic to succeed would enable an employer to dispense an extreme, self-serving, *post hoc* sanction to insulate itself from responsibility for its initial unlawful conduct, even where, as here, the second conduct was substantially similar to the first (which warranted only a 30-day suspension), and even where, as here, the sanction of termination was out of proportion to any previous discipline for stand-alone offenses imposed by Berklee.

Berklee's obvious motivation in August 2020 makes it all the more egregious that Berklee has engaged in such a long delay in moving to add a defense that is based on information it knew about for years. There is no "after-acquired evidence" here, merely an egregiously delayed, newly adopted argument that is disputed on its face and implausible at that.

## IV.  THE ROE INVESTIGATION WOULD NOT HAVE ARISEN ABSENT THE ALALI INVESTIGATION

In seeking to amend its Answer to purportedly limit Farzinpour's damages, Defendant would have this Court view the Roe investigation as standing alone, unconnected to Berklee's unlawful conduct in the Alali matter. But the two matters were interwoven from the start (as Downes and Berklee also admit). Record evidence indicates that it is highly unlikely that, without Alali's allegations and campaign to ruin Farzinpour, the Roe investigation would never have arisen in the first place. If Berklee had not subjected Plaintiff to the biased and unfair Alali investigation, Jane Roe would not have come forward.

Berklee reached an erroneous outcome in the Alali investigation using an unlawfully biased and unfair process. (ECF No. 63, ¶ 125, 135, 150; ECF No. 70, ¶ 125, 150). Berklee communicated

the outcome to Farzinpour on December 13, 2019 and denied Farzinpour's appeal three weeks later (February 5, 2020). *Id.* Typical of first time "offenses," Farzinpour served a 30-day suspension in the Alali matter and returned to the classroom in February of 2020. (ECF No. 70, ¶ 135-136, 151).

Alali then publicly revealed that Berklee had found Plaintiff responsible for sexual harassment and voiced her discontent with what she believed was Berklee's insufficient punishment of Farzinpour. She broadcast this on various social media platforms in March 2020. (ECF No. 70, ¶ 159; ECF No. 70-37). This was clearly retaliation under Berklee's so-called "Equity Policy," which Berklee refused to enforce against Alali. (Exhibit F at BCM002156 (prohibiting retaliation against "any person . . . who participates in an investigation of possible discrimination, harassment, or sexual or gender-based misconduct"). Berklee only counted it as "retaliation" when Farzinpour defended himself against Berklee's biased process; not when Alali violated its rules to target and ruin Farzinpour.

Alali's vindictive campaign succeeded. The *Boston Globe* published an article (March 16, 2020) identifying both Alali and Farzinpour by name and reporting that Farzinpour was found responsible for sexually harassing Alali at Berklee. (ECF No. 70-40). Roe, an alumna of Berklee, reached out to Alali to discuss the allegations. (Exhibit D; see also ECF No. 70-69). This prompted Roe to initiate her complaint against Plaintiff based on alleged interactions from nearly two years prior. *Id.* Roe reported her allegations to Berklee on or around March 11, 2020, and Berklee issued a notice of investigation regarding the Roe about a week later (March 19, 2020). (ECF No. 70, ¶ 168-171). Had Berklee not conducted its biased investigation in the Alali matter and but for Berklee's erroneous outcome, the ensuing social media storm would not have occurred. Roe would not have reached out to Alali. She would have no knowledge of the Alali complaint and Berklee's decision. It remains an issue of fact whether Roe would have initiated a complaint against Plaintiff at all.

### V. THERE IS NO "AFTER-ACQUIRED EVIDENCE"

Berklee's motion to amend is based on the outcome of the Jane Roe investigation, which it concluded two years ago. Berklee indisputably had full knowledge of the final disposition of the Roe matter approximately eight months before the date on which Berklee answered the Complaint in this Court. (ECF No. 47, dated June 10, 2021). As Defendant acknowledges, Berklee communicated the outcome of the Roe investigation to Farzinpour the year before (on August 14, 2020). (ECF No. 63, ¶ 222-223; ECF No. 90 at 5). Farzinpour appealed that outcome, which Berklee denied eight months before answering the Complaint (on October 19, 2020). (ECF No. 63, ¶ 230). Berklee's argument for good cause to amend therefore fails under the standard set forth by *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73 (1st Cir. 2019). Berklee possessed the relevant information regarding the outcome of the Roe investigation long before it submitted its Answer. (ECF No. 47).

Given Berklee's "protracted delay" and its belated motion based on information it has had from the outset, the denial of Berklee's motion to amend its Answer at this late stage is straightforward under *Miceli*. 914 F.3d at 86 ("[P]rotracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend'"). Berklee falsely asserts that there is no prejudice to Plaintiff resulting from this undue delay.

But it is obvious that if Berklee had timely added its affirmative defense, that would have affected the manner in which Plaintiff's counsel took discovery and questioned relevant fact witnesses in depositions on the issue of how Berklee chose the extreme sanction of termination rather than a lesser sanction for the Jane Roe matter—in line with similar matters that resulted in lenient sanctions.

It is not for Berklee to judge whether "there is no other or different discovery he would have taken" if it had not engaged in protracted delay in seeking to add the affirmative defense. (ECF No. 90 at 5). "The protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Miceli*, 914 F.3d at 86.

10

## VI. CONCLUSION

For all of the reasons set forth above, the Court should deny Berklee's motion for leave to file an amended answer and clarify that the Order on Summary Judgment (ECF No. 83) does not foreclose damages flowing from Berklee's wrongdoing in the Alali matter, merely because of Berklee's after-created evidence in the Jane Roe matter.

DATE: October 5, 2022

Respectfully submitted,

Michael Thad Allen (BBO#679795)
Samantha K. Harris
admitted *Pro Hac Vice*
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT  06320
(860) 772-4738
mallen@allenharrislaw.com
sharris@allenharrislaw.com

## **CERTIFICATE OF SERVICE**

I certify the date appearing in the caption of this document, this document was filed through the ECF System of the United States District Court for the District of Massachusetts and will be served electronically on the Registered Participants identified in the Notice of Electronic Filing.

*/s/ Michael Thad Allen*
Michael Thad Allen